# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
## (BALTIMORE)

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. **1:22-CR-00330-001** |
| AYAZ QURESHI | |

### DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA

NOW COMES, the Defendant, Mr. Ayaz Qureshi, through his Counsel, Jonathan Y. Ai, and at the specific request of the Defendant pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure, respectfully requests that this Honorable Court grant him leave to withdraw his guilty plea and in support therefore, states the following:

#### Procedural History

Defendant was charged with a one-court Information on September 19, 2022, namely, Wire Fraud Conspiracy under 18 U.S.C. 1349, § 1343.

On October 14, 2022, the Defendant appeared before the Honorable Richard D. Bennett and pled guilty to once of a one-count Information. A Presentence Report and Investigation was ordered and sentencing was scheduled for February 2, 2023. Defendant's sentencing was subsequently postponed two times, and is set for September 2023.

After pleading guilty, Defendant sought to obtain new counsel, find an interpreter and raise several grounds regarding the voluntariness of his plea, and the effectiveness of his counsel.

#### Law and Argument

This court may permit Defendant to withdraw his guilty plea, if he can demonstrate a fair and just reason for the action.

1

The Federal Rules of Criminal Procedure, Rules 11 states, in pertinent part:

> (d) Withdrawing a Guilty or Nolo Contendere Plea. A defendant may withdraw a plea of guilty or nolo contendere:
>
> (1) before the court accepts the plea, for any reason or no reason; or
>
> (2) after the court accepts the plea, but before it imposes sentence if:
>
> (A) the court rejects a plea agreement under 11(c)(5); or
>
> (B) the defendant can show a **fair and just reason** for requesting the withdrawal.

Such requests, contemplated by the Federal Rules of Criminal Procedure, need only by granted by the District Court if they are filed for a "fair and just reason." See Fed. R. Crim. P. 11(d)(2)(b) ("A defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence[,] if . . . the defendant can show a fair and just reason for requesting the withdrawal."

In this case, Defendant raises several reasons to establish "fair and just reason."

### I. **Defendant Did Not Possess the Cognitive Functioning to Comprehend the Nature of the Conspiracy Charge Nor the Plea Agreement.**

First, Defendant is not competent to understand his plea due to low cognitive functioning.

Dr. Mintz's report states:

> "*Based on the clinical findings detailed above, it is highly unlikely that Mr. Qureshi would have the verbal or executive functioning skills to manage the complex documentation required to navigate a complex, multi-step process on his own. Furthermore, his verbal deficits are likely to directly interfere with, and compromise his understanding of, complex legal proceedings. It is highly unlikely that he would be able to understand legal documentation in written or spoken form. Mr. Qureshi's verbal deficits and executive functioning deficits may also impair his ability to assist his legal counsel in respect to any legal proceedings*." Exhibit A - P.10-11.

> "*However, given the nature of the case (i.e., the alleged crimes were based on forms completed in English), Mr. Qureshi's English-language abilities are particularly relevant. Not only does Mr. Qureshi display verbal deficits in the extremely low range, but his*

2

*reading abilities are generally on-par with the average reading abilities of seven-year-old child. His oral language skills are similarly impaired.*" Exhibit A - P.10.

The low level of cognitive function Defendant suffers from raises reasonable doubt as to whether he could have participated in, much less orchestrate the level of fraud in this case. Defendant suffers from a developmental disability as established by Dr. Mintz's report, which "*impairs his ability to understand complex legal proceedings and impairs his ability to assist his legal counsel in respect to any legal proceeding.*" As such, the failure of the Court to identify and *voir dire* this issue violated Defendant's Constitutional rights, as well as, his right to due process. Per Dr. Mintz, this Defendant's language skills are "*on-par with the average reading abilities of a seven-year old child.*" Exhibit A - P. 10.

A defendant may not be criminally prosecuted while he or she is mentally incompetent or suffers from a developmental disability. *See* Medina v. California, 505 U.S. 437, 449 (1992). If the court in which the conviction was rendered had reason to believe that the client was not mentally competent or suffered from a developmental disability impairing his or her ability to plead guilty, waive counsel, or proceed to trial, and further failed to inquire into defendant's competency or to conduct a competency hearing, that plea is invalid. *See* Godinez v. Moran, 509 U.S. 389.

The federal constitutional test for the competency of a defendant to enter a plea of guilty is identical to the test for competency to stand trial under the due process clauses of the Fifth and Fourteenth Amendments. Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 2686 (1993). That test requires the defendant to have the "'*sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . .* [and] *a rational as well as factual understanding of the proceedings against him*.'" Dusky v. United States, 362 U.S. 402, 402 (1960).

Per Dr. Mintz's report, this particular Defendant lacked the developmental ability to participate both in a complex legal proceeding and assist his counsel in his own defense.

> "*Mr. Qureshi's verbal deficits and executive functioning deficits may also impair his ability to assist his legal counsel in respect to any legal proceedings*." Exhibit A - P. 11.

> "*His verbal deficits are likely to directly interfere with, and compromise his understanding of, complex legal proceedings. It is highly unlikely that he would be able to understand legal documentation in written or spoken form*." Exhibit A - P. 11.

When read in conjunction with Dusky, this Defendant who possess the English language skills of a "*seven year old child*," and suffers from "*verbal deficits and executive functioning deficits*" could never have the sufficient, present ability to consult with his lawyer to a reasonable degree of rational understanding.

## II. **Defendant Required the Assistance of an Interpreter in Court**

Second, Defendant suffered prejudice when he was never provided an Urdu interpreter so that he could understand the proceedings in Court. Further, Defendant never waived his right to interpretation before this Court. Per the Defendant's affidavit, he was never provided one in Court, nor did his attorney advocate that one was necessary. Exhibit B - P.5.

The right of a criminal defendant with limited English proficiency to an interpreter is not expressly recognized by the US Constitution or the Supreme Court; however, such a right is implied in the Fifth, Sixth and Fourteenth Amendments. Indeed, the rights of a criminal defendant to due process, equal protection and a fair trial would be substantially hampered, if not completely denied, if a defendant were not able to understand the nature of charges against him and the meaning of the criminal proceedings. The right of a criminal defendant to have effective counsel as assistance, to confront witnesses against him and to protect himself against self-incrimination will have very little or no meaning at all if he is unable to grasp the complex legal terms and the English language.

The right of a criminal defendant to a court-appointed interpreter can also be implied from the prohibition against discrimination based on national origin in Title VI of the Civil Rights Act.

The broad Fifth Amendment right not to be deprived of life, liberty or property without due process of law, the more specific Sixth Amendment rights of a criminal defendant to counsel, to a speedy trial, to be informed of the nature and cause of the accusation, to confront and cross-examine the witnesses, and the Fourteenth Amendment rights to due process and equal protection of the laws are significantly impaired, if not completely denied, when a party to a judicial proceedings cannot competently speak or understand English.

In <u>Perovich v. United</u> States, 205 US 86, (1907), the Court held "*whether the court erred in refusing to appoint an interpreter … is a matter largely resting in the discretion of the trial court, but one that remains reviewable on appeal.*" However, this Court was denied any opportunity to insure such right was protected due to Defendant counsel's improper representation that he did not need one to plead guilty. Exhibit B - P.5, P.7. This is a violation of Defendant's rights not only under the Constitution, but also his right to due process as stated above. The right to an interpreter rests most fundamentally on the notion that no individual defendant should face the spectre of an incomprehensible legal proceeding which may result in his or her imprisonment.

### III. **Defendant's Counsel Provided Ineffective Assistance**

Third, Defendant's attorney provided ineffective assistance during the guilty plea phase by threatening the Defendant and exerting coercion over him if he did not plea guilty. Moreover, counsel failed to explain to Defendant the contents of the plea agreement (with an interpreter), counsel failed to explain what a conspiracy meant (with an interpreter); counsel ignored

Defendant's request to investigate the facts of the case, and counsel failed to recognize Defendant's need for simultaneous Court interpretation. Exhibit B - P.6, P.7, P.8, P.9, P.10 & P.11.

Defendants have the right to counsel at all critical stages of a criminal proceeding, including plea hearings. See, e.g., <u>Iowa v. Tovar</u>, 541 U.S. 77, 80 (2004). Ineffective assistance of counsel in inducing a defendant to plead guilty is measured by the familiar standards of <u>Strickland v. Washington</u>, 466 U.S. 688 (1984), which requires the defendant to prove "*both that counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice, in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.*'" <u>United States v. White</u>, 174 F.3d 290, 294 (2d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 694). *See also* <u>United States v. Davis</u>, 239 F 3d 283 (2nd Cir 2001). Defendant's Sixth Amendment right to counsel attaches at all critical stages and a guilty plea "*is the most critical stage of the proceeding as it forecloses his very right to a trial,* " *Davis*, supra at 286.

As the Supreme Court held in <u>Strickland</u>, counsel must, at a minimum, conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent his or her client.

Here, Defendant never had the benefit of "working closely" with counsel, as Defendant only met with counsel 3-4 times prior to the guilty plea. Further, during these meetings, all of which were conducted in English, the Defendant never had an opportunity to explain (through an interpreter) what his defense was, namely, that he has no knowledge of what Co-Defendant was doing, and further that he never had any intent to pursue a PPP loan, and that he did not manufacture any fraudulent documents in support of such loan. Exhibit B - P.7, P.9. If anything, Defendant felt fear after hearing his own lawyer's threats, and such fear created a chilling effect

on Defendant's right to be heard before this Court, and advocate his innocence. Exhibit B - P.8, P.9, & P.10.

Defendant's initial thought was that Co-Defendant, Adam, could held him improve his credit score, so that Defendant could apply for a residential mortgage loan. Exhibit B - P.14. Defendant never once asked nor discussed with Co-Defendant the idea of pursuing PPP loans. Exhibit B - P.15. Per the Defendant's affidavit, these acts were all manufactured and originated by Co-Defendant. Exhibit B - P.15. Without the ability to discuss the matter in his native language and convey his innocence, former counsel never afforded Defendant the benefit of an investigation of the facts. Exhibit B - P.5, P.7, P.11. In only meeting with the client 3-4 times, and conducting these meetings without the benefit of an Urdu interpreter, Defendant was left in a befuddled state of mind. Exhibit B - P.4. Even more egregious, Defendant's counsel asserted that Defendant did not actually need an interpreter. Exhibit B - P.5. Thereby squashing any hope that Defendant could raise to the Court or anyone else that he did not comprehend what he was hearing, and that further, he did not even understand what a criminal conspiracy was. Exhibit B - P.20.

Ultimately, Defendant's former counsel's actions resulted in an underlying conviction that was obtained in violation of Defendant's Sixth Amendment right. *See* United States v. Attar, 38 F.3d 727, (4th Cir. 1994). Indeed, the very purpose of requiring a district court to "*satisfy itself that there is a factual basis for the plea before entering judgment*" is to ensure "*the plea is made voluntarily with understanding of the nature of the charge*." Fed. R. Crim. P. 11, Advisory Comm. Notes (1966). By arguing that his plea lacks a factual basis, a defendant raises the possibility that his decision to plead guilty is the product of **coercion** or misunderstanding. United States v. Mastrapa, 509 F.3d 652, 659–60 (4th Cir. 2007). In this case, the actions of

Defendant's prior counsel foreclosed any possibility of Defendant understanding the nature of the charge he faced, and absolutely begs the question of the involuntary nature of his plea. Not only did the former counsel fail to explain to Defendant the contents of the plea agreement, the nature of the charges or even the sentencing guidelines with Defendant, he also made egregious statements of duress to the Defendant. These included: "*if [you] did not plead guilty, [I] will quit being [your] lawyer*," "*Ayaz, you are here to plea guilty, when you appear in front of the Judge, whatever he says or reads, don't say anything except, 'Yes, Your Honor*," Exhibit B - P. 8, that the Defendand should sign the plea agreement before the Government "*changes their minds*," Exhibit B - P. 9, and finally that, "*…plead guilty, its good for you and for me*." Exhibit B - P.10.

Without the benefit of counsel's effective assistance, the entire factual basis of the plea becomes wholly unreliable, and as challenged by Defendant's affidavit, stands in conflict with the charge of conspiracy.  This case can also be distinguished from those cases where a Defendant claims innocence because they don't know all members of a conspiracy or every stage of said conspiracy. Defendant here is stating he had no knowledge whatsoever of the PPP loan at all, other than believing he was attempting to fix his credit and applying for a residential home loan. Even if there were stipulated facts in this case, such stipulations still don't cure the errors of former counsel's harms as alleged by Defendant.

A lawyer has a duty to "*investigate what information . . . potential eye-witnesses possess[], even if he later decide[s] not to put them on the stand*."  Id. at 712.  See also Hoots v. Allsbrook, 785 F.2d 1214, 1220 (4th Cir. 1986). A guilty plea that is obtained through "*coercion, terror, inducements, [or] subtle or blatant threats*" is involuntary and violative of due process. Boykin v. Alabama, 395 U.S. 238,243 (1969). Further, "[P]*leas induced by such threats , misrepresentation , or perhaps by promises that are by their nature improper as having no proper*

8

*relationship to the prosecutor's business . . . [cannot stand]."* Brady v. United States, 397 U.S. 742, 755 (1969).

Defendant's former counsel's threat that he would quit, if Defendant did not plead is an unlawful act of coercion. Defendant's counsel never investigated any of the facts giving rise to this indictment. Taken in conjunction, all the allegations of counsel's failures, cumulatively, along with being denied an interpreter, and the cognitive deficiencies identified by Dr. Mintz, this Defendant suffered a paramount prejudice in that he lost his right to go to trial and prove his innocence.

### IV. **Defendant is Innocence of the Charge of Conspiracy**

Fourth, Defendant in his affidavit, asserts actual innocence of the charges because he not only lacked the *mens rea* to commit the crimes alleged, but also did not knowingly produce any of the documents in support of the alleged PPP loans. Exhibit B - P.12, P.13, P.15, P.16, P.17, P.18, & P.20. Defendant maintains he never understood what type of loan he was pursuing, and moreover, even attempted to return the excessive funds once he learned about it to the Co-Defendant. Exhibit B - P.17, P.20.

A claim of actual innocence is known as a gateway to a Defendant's claims of constitutional error, such as under Strickland. *See* McQuiggin v. Perkins, 569 U.S. 383 (2013).

In analyzing Defendant's innocence, it also serves the purpose of establishing prejudice under Strickland. Here, the Defendant's affidavit states, unequivocally, that he never originated or discuss any plans to apply for a PPP loan. Exhibit B - P.12. Defendant states, under oath, that all documents provided in the case were forged by the Co-Defendant or created without his knowledge. Exhibit B - P.13, P.15.

Further, Defendant never had the benefit of an interpreter or effective counsel to advance the facts in support of his claim of innocence in this case.

Per Dr. Mintz's report, this Defendant's

"*verbal deficits are likely to directly interfere with, and compromise his understanding of, complex legal proceedings. It is highly unlikely that he would be able to understand legal documentation in written or spoken form. Mr. Qureshi's verbal deficits and executive functioning deficits may also impair his ability to assist his legal counsel in respect to any legal proceedings.*" Exhibit A - P.11.

V. **Conclusion**

Defendant submits that under FRCP Rule 11(d)(2)(B), there is sufficient evidence of fair and just reason to grant leave for Defendant to withdraw his guilty plea. At its core, Dr. Mintz's report provides ample evidence of a disability that affects both Defendant's ability to understand complex legal proceedings, as well as, assist his own counsel with his defense. Furthermore, there is evidence that Defendant required the assistance of an interpreter, which was never provided. Finally, there are the facts in support of Defendant's claim of actual innocence. Taken in conjunction, Defendant submits that "fair and just reasons" exist for the grant of relief.

Respectfully submitted,

**AI & ASSOCIATES**

Jonathan Ai
Bar #14898
1 Research Court, Suite 450
Rockville, Maryland 20850
240-403-4088/301-519-8005 (fax)
Jonathan@ailawpc.com

10

## CERTIFICATE OF SERVICE

    I, Jonathan Ai, hereby certify that a copy of Defendant's Motion to Withdraw Guilty Plea was served via the CM/ECF E-Filing system on:

Paul.Riley@usdoj.gov
Paul A. Riley
AUSA, Northern Division
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201

_____
Jonathan Ai
Bar#14898