PAR/BAM: 2022R00371
hmg.12.18.23

USDC- BALTIMORE
'23 DEC 19 PM 4:16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * CRIMINAL NO. RDB-22-330 |
| | * |
| AYAZ QURESHI, | * (Wire Fraud Conspiracy, 18 U.S.C. |
| | * § 1349; Wire Fraud, 18 U.S.C. § |
| Defendant. | * 1343; Aiding and Abetting, 18 |
| | * U.S.C. § 2; Forfeiture, 18 U.S.C. § |
| | * 18 U.S.C. § 982(a)(2)(A); 28 U.S.C. |
| | * § 2461(c)) |

**SUPERSEDING INDICTMENT**

**COUNT ONE**
**(Wire Fraud Conspiracy)**

**Relevant Individuals, Entities, and Account(s)**

The Grand Jury for the District of Maryland charges that:

At times material to the Indictment:

1. Defendant **AYAZ QURESHI ("QURESHI")** was a resident of Severna Park, Maryland.

2. On or about February 27, 2013, **QURESHI** incorporated a Maryland business called Yazee, Inc. **QURESHI** was the President of Yazee, Inc.

3. Yazee, Inc. maintained an account at Wells Fargo Bank, N.A. ("Wells Fargo"), a financial institution insured by the Federal Deposit Insurance Corporation and doing business throughout the United States, with an account number ending in 9954 (the "9954 Account"). **QURESHI** and his wife were the sole signatories on this account.

4. Cross River Bank ("Cross River") was a federally insured financial institution headquartered in Fort Lee, New Jersey. Cross River was an approved United States Small Business Administration ("SBA") lender and participated as a lender in the Paycheck Protection Program ("PPP").

5. Co-conspirator A.S. was a resident of Baltimore, Maryland who ran a purported financial services business.

6. Payroll Processor 1 was a payroll processing and technology company headquartered in Oklahoma City, Oklahoma doing business throughout the United States.

7. The Internal Revenue Service ("IRS") was a bureau of the United States Treasury charged with, among other things, ensuring that taxpayers meet their tax obligations under the law.

## The Paycheck Protection Program

8. The SBA was an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by supporting the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

9. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in and around March 2020, designed to provide emergency financial assistance to Americans suffering from the economic effects caused by the COVID-19 pandemic. Two sources of relief provided by the CARES Act were the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program and the expansion of the Disaster Loan Program to include pandemic related economic injury through COVID-19 Economic Injury Disaster Loans ("EIDL").

10. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application (SBA Form 2483), the business, through its authorized representative, had to state its average monthly payroll expenses and number of employees. In addition, as part of the PPP loan

application process, businesses had to provide documentation showing their payroll expenses. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

11. Once a qualifying business completed a PPP application, a participating lender, or agent on behalf of the participating lender, processed the application. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees.

12. Proceeds from a PPP loan were legally required to be used only for certain permissible business expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness, if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

**The Scheme to Defraud**

13. Beginning in or about March 2021 and continuing through in or about December 2021, in the District of Maryland and elsewhere, the defendant,

**AYAZ QURESHI,**

did knowingly devise and intend to devise a scheme and artifice to defraud the defraud a financial institution, namely Cross River, and the United States, to obtain and attempt to obtain money and property of Cross River by means of materially false and fraudulent pretenses, representations, and promises, that is, the defendant knowingly submitted and caused to be submitted false information to Cross River for PPP funds and the defendant gave A.S. a share of the PPP payouts in the form of kickbacks (hereinafter "the scheme to defraud").

**The Conspiracy and Scheme To Defraud**

14. Beginning in or about March 2021 and continuing through in or about December 2021, in the District of Maryland and elsewhere, the defendant,

**AYAZ QURESHI**,

did knowingly and willfully conspire, combine, confederate, and agree with A.S. and others known and unknown to the Grand Jury, to commit wire fraud affecting a financial institution, that is, to knowingly execute and attempt to execute the scheme to defraud through the use of interstate wires, in violation of Title 18, United States Code, Sections 1343 (hereinafter, the "conspiracy").

**The Object of the Conspiracy and Scheme to Defraud**

15. It was the object of the conspiracy and scheme to defraud for **QURESHI** to personally enrich himself by (1) fraudulently obtaining a PPP loan in the amount of more than $250,000.00 for his own personal use and benefit, and for the personal benefit and use of his associates; and (2) offering and paying kickbacks in return for the submission of a false and fraudulent PPP loan application.

**Manner and Means of the Scheme to Defraud**

16. It was part of the conspiracy and scheme to defraud that Defendant **QURESHI**, A.S., and others known and unknown to the Grand Jury, submitted and caused the submission of false information, including a false PPP loan application and a false 2019 IRS Form 940 that had never been submitted to the IRS, to Cross River to obtain a PPP loan for Yazee, Inc.

17. It was further part of the conspiracy and scheme to defraud that **QURESHI** provided A.S. with certain documents to be submitted with the Cross River PPP loan application, including photographs of **QURESHI's** Maryland driver's license, a voided check from **QURESHI's** 9954 Account, and a 9954 Account statement dated February 29, 2020.

18. It was further part of the conspiracy and scheme to defraud that **QURESHI** caused the PPP application to falsely report and certified the following information:

   a. Yazee, Inc. had 16 employees and an average monthly payroll of $100,289.00;

   b. Yazee, Inc. was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

   c. The information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects; and

   d. The requested PPP funds would be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments.

19. It was further part of the conspiracy and scheme to defraud that A.S., and others fabricated a false IRS Form 940 to be submitted with the PPP loan application for Yazee, Inc., which among other things, falsely claimed total payments to all employees of $1,203,471.52. In fact, in 2019 and 2020, Yazee, Inc.: (1) did not file any 2019 Form 940 with the IRS; (2) pay unemployment tax to the IRS; or (3) withhold federal income tax for any employee. The purpose of the false IRS Form 940 was to circumvent Cross River's requirement that prospective borrowers submit documentation to support the payroll figures that served as the basis for the PPP loan amount.

20. It was further part of the conspiracy and scheme to defraud that based on the fraudulent and false representations and submissions made on behalf of **QURESHI** as the owner of Yazee, Inc., on or about March 22, 2021, the PPP loan funded, and approximately $250,723.00 was distributed by Cross River to the 9954 Account belonging to Yazee, Inc. and controlled by **QURESHI**.

21.     It was further part of the conspiracy and scheme to defraud that **QURESHI** paid A.S. a $75,000 kickback, reflecting approximately 30 percent of the PPP loan amount received by Yazee, Inc. in exchange for A.S.'s role in submitting the PPP loan application for the purported business.

22.     It was further part of the conspiracy and scheme to defraud that **QURESHI** paid A.S. this kickback by providing him the eight checks listed below, each of which was signed by **QURESHI** and had a dollar amount filled in, but that left the payee blank:

   a. Check #1019 in the amount of $15,000.00;

   b. Check # 2022 in the amount of $5,000.00;

   c. Check #2023 in the amount of $10,000.00;

   d. Check # 2024 in the amount of $10,000.00;

   e. Check #2025 in the amount of $10,000.00;

   f. Check #2026 in the amount of $10,000.00;

   g. Check #2027 in the amount of $10,000.00; and

   h. Check #2028 in the amount of $5,000.00.

23.     It was further part of the conspiracy and scheme to defraud that A.S. and others unknown and unknown to the Grand Jury wrote a payee name on each of the checks, each check was deposited into accounts controlled by A.S., and each was ultimately drawn on the 9954 Account.

24.     It was a further part of the conspiracy and scheme to defraud that after receiving the Cross River PPP loan for Yazee., Inc., **QURESHI** and A.S., established and sought to establish payroll processing services through Payroll Processor 1 to purported employees of Yazee, Inc.

25. It was a further part of the conspiracy and scheme to defraud that on forms submitted to Payroll Processor 1, **QURESHI** listed multiple individuals as employees of Yazee Inc. who were never in fact employees of the business.

26. It was a further part of the conspiracy and scheme to defraud that **QURESHI** used the payroll processing services as a method of funneling funds traceable to the PPP loan to **QURESHI**, his wife, and others.

27. It was further part of the conspiracy and scheme to defraud that **QURESHI**, A.S., and others known and unknown to the Grand Jury, used interstate wires to submit, assist in the submission, and communicate with each other about the submission of a PPP loan application to Cross River and to establish payroll processing services from Payroll Processor 1 for Yazee, Inc.

18 U.S.C. § 1349

## COUNTS TWO AND THREE
### (Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 – 13 and 14 – 27 of Count One of this Indictment are incorporated here.

2. On or about the dates set forth below, in the District of Maryland, the Defendant

**AYAZ QURESHI,**

for the purpose of executing and attempting to execute the scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds, as set forth below:

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|---|---|---|---|
| 2 | March 14, 2021 | Submission of PPP loan application for Yazee | From Maryland to a location outside of Maryland |
| 3 | March 22, 2021 | ACH transfer of $250,723.00 from Cross River to the 9954 Account | From a location outside of Maryland to Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with, 982(a)(1) and (2)(A), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under the offense in Counts One through Three of this Indictment.

### Wire Fraud Forfeiture

2. Pursuant to 18 U.S.C. § 982(a)(2)(A), the defendant's conviction under any of the offenses in Counts One through Three of this Indictment, the defendant,

### AYAZ QURESHI

shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the scheme to defraud.

### Substitute Assets

5. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 924(d)
18 U.S.C. § 982(a)(2)(A)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

_Erek L. Barron /ay_
Erek L. Barron
United States Attorney

A TRUE BILL

**SIGNATURE REDACTED**
Foreperson

12/19/23
Date